**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
WESTERN DIVISION**

**JEROME KENDRELL HARRIS**                                                     **PLAINTIFF**

**v.**                                          **CIVIL ACTION NO. 5:13cv104-MTP**

**CHUCK MAYFIELD, et al.**                                                     **DEFENDANTS**

**OPINION AND ORDER**

THIS MATTER is before the Court on the Motion for Summary Judgment [26] filed by Defendant Leah Pounders and the Motion for Summary Judgment [29] filed by Defendants Gerald Cornwell, Chuck Mayfield and Ed Tucker. After careful consideration of the submissions of the parties and the applicable law, the Court finds that the Motions [26] and [29] should be granted, and that this matter should be dismissed with prejudice.

**BACKGROUND**

Plaintiff Jerome Harris, proceeding *pro se* and *in forma pauperis*, filed the instant civil rights action on or about July 15, 2013, pursuant to 42 U.S.C. § 1983.[1] Although Harris is no longer incarcerated, at the time of the events giving rise to this lawsuit, he was a pre-trial detainee at the Adams County Jail ("ACJ"). His claims and requested relief were clarified and amended through his sworn testimony at a *Spears*[2] hearing held on May 15, 2014.[3]

Harris claims that he was denied adequate medical care in while incarcerated at ACJ. Specifically, Harris alleges that he has a dangerous blood clotting disorder and that prior to his

---

[1] *See* Complaint [1].

[2] *Spears v. McCotter*, 766 F.2d 179 (5th Cir. 1985).

[3] *See* Omnibus Order [23].

1

arrest,

he was taking a blood thinner, Coumadin, to treat his condition. Upon arrival at ACJ on February 26, 2013, Harris alleges that his right leg began to swell and become painful as a result of his disorder. He claims that he informed Defendant Gerald Cornell, a ACJ employee, about his condition and requested to be sent to the hospital. Harris claims that he was instead sent to the ACJ nurse, Defendant Leah Pounders.[4]

Harris alleges that Nurse Pounders met with him and informed him that a nurse from the hospital would examine him, but the hospital nurse never arrived. He claims that each time he submitted a sick call request he was sent to Nurse Pounders. According to Harris, Nurse Pounders recommended that he drink plenty of water and rest his leg. Essentially, Harris alleges that he should have been examined by a doctor or sent to the hospital instead of being examined by Nurse Pounders. However, Harris states that he continued to take Coumadin while he was detained at ACJ.

Harris also alleges that he spoke with Captain Ed Tucker, the administrator of ACJ, on several occasions. He alleges that Tucker mostly sent him to Nurse Pounders, but that on one occasion Tucker sent him to the hospital. Harris alleges that he was sent to the hospital on two or three occasions, but that each time he should have been sent to the hospital more quickly.

Finally, Harris names Adams County Sheriff Chuck Mayfield as a defendant. He claims that Mayfield had supervisory responsibilities over the prison and should have provided him with adequate care. Harris admits that he never spoke or corresponded with Sheriff Mayfield regarding

---

[4]Leah Pounders was an employee of Southern Health Partners during the relevant time period. Southern Health Partners contracted with ACJ to provide health care service to inmates beginning in November, 2012. *See* Memorandum in Support [27] at 2.

his medical care.[5]

Harris alleges that his leg continues to be swollen as a result of the inadequate medical care he received at ACJ. He states that he is suing Defendants in their individual capacities and seeks $2.5 million dollars in damages.[6]

## STANDARD

A motion for summary judgement will be granted only when "the record indicates that there is 'no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law.'" *Causey v. Sewell Cadillac-Chevrolet, Inc.*, 394 F.3d 285, 288 (5th Cir. 2004) (citing FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)). The court must view "the evidence in the light most favorable to the nonmoving party." *Id.* However, the nonmoving party "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or 'only a scintilla of evidence.'" *Turner v. Baylor Richardson Medical Center*, 476 F.3d 337, 343 (5th Cir. 2007) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994)). In the absence of proof, the Court does not "assume that the nonmoving party could or would prove the necessary facts." *Little v. Liquid Air Corp.*, 1069, 1075 (5th Cir. 1994) (emphasis omitted).

## ANALYSIS

Deliberate Indifference

A prison official violates the Eighth Amendment when he acts with deliberate indifference to a prisoner's serious medical needs. *Domino v. Texas Dept. of Criminal Justice*, 239 F.3d 752, 754 (5th Cir. 2001). Although Harris was a pre-trail detainee as opposed to a post-conviction inmate at

---

[5] *See* Omnibus Order [23] at 2-3.

[6] *Id.* at 3.

the time of the alleged events, the analysis of his medical claims are governed by the "deliberate indifference" standard. *See Hare v. City of Corinth*, 74 F.3d 633, 648 (5th Cir. 1996). A plaintiff must meet an "extremely high" standard to show deliberate indifference. *Gobert v. Caldwell*, 463 F.3d 339, 346 (5th Cir. 2006) (quotations omitted). For a prison official to be liable for deliberate indifference, the plaintiff must show that "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994).

Deliberate indifference is particularly difficult to establish when the inmate was provided with ongoing medical treatment. "Unsuccessful medical treatments, acts of negligence, or medical malpractice do not constitute deliberate indifference, nor does a prisoner's disagreement with his medical treatment, absent exceptional circumstances." *Gobert*, 463 F.3d at 346 (citations omitted). The plaintiff must show that the officials "refused to treat him, ignored his complaints, intentionally treated him incorrectly, or engaged in any similar conduct that would evince a wanton disregard for any serious medical needs." *Johnson v. Treen*, 759 F.2d 1236, 1238 (5th Cir. 1985). Complaints that more treatment should have been ordered, without more, are insufficient to show deliberate indifference. *See Domino*, 239 F.3d at 756 ("[T]he decision whether to provide additional treatment is a classic example of a matter for medical judgment."). "[D]elay in medical care can only constitute an Eighth Amendment violation if there has been deliberate indifference that results in substantial harm. *Easter v. Powell*, 467 F.3d 459, 463 (5th Cir. 2006).

In this case, Harris's sworn testimony at the *Spears* hearing indicates that he received substantial medical attention in connection with his blood disorder. At the hearing, Harris testified

that Defendants Cornwell and Tucker sent him to Nurse Pounders each time he submitted a sick call, and that Nurse Pounders examined him on each occasion and gave him medical advice.[7] Harris testified that he was provided Coumadin, an anti-blood clot medication, while incarcerated at ACJ. Finally, Harris testified that Defendant Tucker sent him to the hospital on at least one occasion.[8]

Likewise, Harris's medical records at ACJ reflect that he received extensive medical attention. Harris arrived at ACJ on February 26, 2013.[9] On that day, he completed and signed a medical questionnaire that stated he suffered from blood clots and that he took a prescription blood thinner.[10] ACJ medical personnel approved Harris's prescription medication two days later on February 28, 2013.[11] On March 18, 2013, Harris submitted an inmate grievance form complaining about the blood clots in his leg. He was examined by Nurse Stacy Thompson, who examined Plaintiff's legs for deep vein thrombosis and noted a positive pulse palpation and no swelling. Thompson placed Harris on the list to see a physician.[12]

On April 8, 2013, Harris submitted a sick call slip complaining of leg pain and swelling and requested to be sent to the hospital. Later that day, Harris was examined by Nurse Pounders, who noted no swelling or shortness of breath and instructed Harris to rest his leg.[13] On April 9, 2013,

---

[7]*See* Omnibus Order [23] at 2.

[8]*Id.*

[9]*See* Exhibit A [29-1].

[10]*See* Exhibit B [29-2].

[11]*See* Exhibit E [9-5].

[12]*See* Medical Records [35] at 7.

[13]*Id.* at 10.

Harris was examined by Dr. Charles Borum, who ordered that his PT/INR[14] be checked. Upon receiving Harris's test results on April 16, 2013, Dr. Borum ordered that Harris's blood-thinner medication be increased.[15] Harris was given a medical evaluation three days later on April 19, 2013. Nurse Pounders examined Harris and noted no swelling in his leg. She advised him to complete a sick call slip if his condition worsened.[16] Harris was evaluated again on April 26 and April 30, 2013, and after each examination Nurse Pounders found no swelling.[17]

Harris submitted a sick call slip on May 6, 2013, complaining of dizziness. Nurse Pounders examined Harris, ensured that there was no swelling in his legs, and advised him to rest and drink plenty of water.[18]

On May 10, 2013, Harris was brought to the medical unit after complaints of pain in his right calf. Nurse Pounders examined Harris and noted that his right calf was rigid. She then instructed jail officers to transport Harris to the emergency department at Natchez Regional Medical Center.[19] Harris was evaluated at Natchez Regional Medical Center later that day, where he was diagnosed with leg pain with no evidence of deep vein thrombosis.[20] Harris was discharged from the hospital

---

[14]PT/INR is an acronym for Prothrombin Time and International Normalized Ratio. The test measures how well a blood-thinning medication, such as warfarin, is working to prevent blood clots. *See* National Blood Clot Alliance, http://www.stoptheclot.org/news/article120.htm (Last Visited March 9, 2015).

[15]*See* Medical Records[35] at 3.

[16]*Id.* at 5.

[17]*Id.*

[18]*Id.* at 9.

[19]*Id.* at 5.

[20]*Id*. at 61.

with instructions to complete another PT/INR test.[21] On May 13, 2013, Harris was evaluated by Nurse Pounders, who noted that he was ambulating without difficulty and appeared to be in less pain. She also measured Harris's right calf and noted that it was not swollen.[22] Harris was released from ACJ on July 31, 2013.[23]

"Medical records of sick calls, examinations, diagnoses, and medications may rebut an inmate's allegations of deliberate indifference." *Banuelos v. McFarland*, 41 F.3d 232, 235 (5th Cir. 1995) (affirming district court's dismissal of inmate's deliberate indifference claims as frivolous); *Harris v. Epps*, 523 Fed. App'x 275, 275 (5th Cir. 2013) (per curium) (affirming summary judgment where inmate's medical records reflected that he had received ongoing medical treatment). The Court notes that Harris has not responded to the motions for summary judgment or offered any evidence contradicting his medical records.

Although Harris is clearly dissatisfied with the Defendants' attempts to treat him, his own testimony as well as his medical records indicate that he regularly received ongoing medical treatment. Plaintiff does not allege that Defendants Tucker, Cornwell or Pounders "refused to treat him, ignored his complaints, intentionally treated in incorrectly or engaged in any similar conduct that would clearly evince a wanton disregard for any serious medical needs." *Domino*, 239 F.3d at 756. Plaintiff merely argues that Defendants Tucker and Cornwell should have sent him to a doctor instead of Nurse Pounders, and that they should have sent him to the hospital sooner and more often. Plaintiff also argues that Nurse Pounders wrongfully advised him to rest his leg and drink water in

---

[21]*Id.* at 59.

[22]*Id.* at 5.

[23]*See* Omnibus Hearing Transcript [26-1] at 12.

response to his concerns of a blood clot. However, it is well settled that neither unsuccessful medical treatment nor a prisoner's disagreement with medical treatment establishes deliberate indifference. *See, e.g., Gobert*, 463 F.3d at 346; *Stewart v. Murphy*, 174 F.3d 530, 537 (5th Cir. 1999); *Varnado v. Lynaugh*, 920 F.2d 320, 321 (5th Cir. 1991). At best, Plaintiff's claims allege negligence and medical malpractice on behalf of the Defendants, which falls short of the required showing of deliberate indifference. *See Gobert*, 463 F.3d at 346 (holding that acts of negligence or medical malpractice do not constitute deliberate indifference).

Finally, the record is devoid of any evidence of the delay that Harris argues occurred in connection with his medical treatment at ACJ. As outlined above, Harris received swift medical attention in response to each complaint regarding his blood-clotting disorder. In every instance, Harris was evaluated by ACJ medical personnel within the day, and on one occasion he was promptly transported to the local hospital. Harris has also failed to show that he suffered substantial harm as a result of the alleged delay. *See Easter*, 467 F.3d at 463 (holding that delay in medical care only implicates Section 1983 upon a showing that a substantial harm has resulted). Harris testified at the *Spears* hearing that his leg continues to be swollen,[24] but he has stated no specific facts nor offered any evidence supporting this general claim. Harris testified that he suffered from a blood clotting disorder prior to his incarceration at ACJ. Allegations that he continues to suffer from the disorder offer little support to Harris's claim that he sustained lasting injuries due to a delay in treatment.

*Respondeat Superior*

Plaintiff names Adams County Sheriff Chuck Mayfield as a Defendant. Plaintiff admits that

---

[24]*See* Omnibus Order [23] at 3.

8

Defendant Mayfield took no part in his medical treatment. It is well established that Section 1983 does not create supervisory or *respondeat superior* liability. *Oliver v. Scott*, 276 F.3d 736, 742 (5th Cir. 2002). Under Section 1983, a supervisor may only be found liable if he is personally involved in the constitutional deprivation or if there is "a sufficient causal connection between the supervisor's wrongful conduct and the constitutional violation." *Thompkins v. Belt*, 828 F.2d 298, 304 (5th Cir. 1987); *see also Coleman v. Houston Indp. Sch. Dist.*, 113 F.3d 528, 534 (5th Cir. 1997) ("Only the direct acts of omissions of government officials . . . will give rise to individual liability under Section 1983."). Thus, even if a constitutional violation had occurred, Defendant Mayfield could not have been liable for it under *respondeat superior* theory. *See, e.g., Bush v. Viterna*, 795 F.2d 1203, 1206 (5th Cir. 1986) (citing *Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690-95 (1978)). Accordingly, for the reasons set forth above, Defendants are entitled to judgment as a matter of law.[25]

## CONCLUSION

For the reasons stated above, the court finds that Defendants' Motions for Summary Judgment [26] & [29] should be GRANTED. Accordingly,

IT IS, THEREFORE, ORDERED:

1. That the Motion for Summary Judgment [26] filed by Leah Pounders and the Motion

---

[25]Although Defendants have raised the defense of qualified immunity, "if it becomes evident that the plaintiff has failed to state or otherwise establish a claim, then the defendant is entitled to dismissal on that basis." *Wells v. Bonner*, 45 F.3d 90, 93 (5th Cir. 1993) (citing *Siegert v. Gilley*, 500 U.S. 226, 231-33 (1991)); *see also Sappington v. Bartee*, 195 F.3d 234, 236 (5th Cir. 1999). Because the Court finds that the Harris's allegations are not cognizable as constitutional claims, it need not address the issue of whether the Defendants are entitled to qualified immunity.

    for Summary Judgment [29] filed by Gerald Cornwell, Chuck Mayfield, and Ed Tucker are GRANTED.

2. A separate judgment in accordance with Federal Rule of Civil Procedure 58 will be filed herein.

SO ORDERED this the 12th day of March, 2015.

              s/ Michael T. Parker
              United States Magistrate Judge